CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

March 30, 2026

LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

DANIEL BRIAN FOGEL,　　　　　　　　　)
　　　Plaintiff,　　　　　　　　　　　　)　　Civil Action No. 7:24-cv-00555
　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)　By:  Elizabeth K. Dillon
OFFICER J.S. BLACKBURN,　　　　　　　)　　　Chief United States District Judge
　　　Defendant.　　　　　　　　　　　)

## MEMORANDUM OPINION

Plaintiff Daniel Brian Fogel, a Virginia prisoner acting *pro se*, brought this 42 U.S.C. § 1983 lawsuit alleging a claim for excessive force by defendant J.S. Blackburn for using O.C. spray against him at Wallens Ridge State Prison.  Before the court is Blackburn's motion for summary judgment (Dkt. No. 36) and Fogel's motion for a preliminary injunction (Dkt. No. 45). Fogel has responded to the motion for summary judgment.  (Dkt. Nos. 43, 43-1, 43-2.)  In his response, Fogel has asked the court to enter summary judgment in his favor.  Thus, the court will address this matter as presenting cross-motions for summary judgment.

For the reasons stated below, both motions for summary judgment will be denied, and Fogel's motion for a preliminary injunction will also be denied.

### I.  BACKGROUND

**A.  Plaintiff's First Amended Complaint**

In his amended complaint, which is verified, Fogel alleges an Eighth Amendment excessive force claim against Officer Blackburn for an incident that occurred on May 23, 2024, when Blackburn was distributing dinner meal trays at Wallens Ridge.  (Am. Compl. ¶ 9, Dkt. No. 27.)

Fogel alleges that on May 23, 2024, at approximately 3:40 p.m., Officer Blackburn was passing out dinner meal food trays on the bottom floor of D-6 Pod.  Blackburn opened the tray slot of cell number 602, gave Fogel his Sealed Religious Diet (SRD) tray, and continued to pass out food trays.  Plaintiff called Blackburn back to his cell door and asked him to open the tray slot and take the tray back.  Fogel asked Blackburn to contact the kitchen supervisor because Fogel had requested a "no bean" special diet food tray because of his allergy profile, causing him severe stomach pain and discomfort.  Blackburn took the tray and placed it back in the tray cart.  (Am. Compl. ¶ 9.)  Blackburn stated, "If I take this tray, [you're] not getting another."  (*Id.* ¶ 10.)

Fogel then placed his hand onto the front lip of the box and the lid of the tray slot to prevent it from being closed.  (*Id.* ¶ 11.)  Fogel did not attempt to reach or grab Blackburn, and Fogel did not threaten or make any intimidating gestures towards Blackburn.  (*Id.* ¶ 12.)  Fogel asked Blackburn to call the sergeant on duty to come speak to him or he was not letting the tray slot go.  Blackburn stated, "I don't care, I'll just gas you."  (*Id.* ¶ 13.)  Blackburn did not give any orders, commands, or verbal warnings before spraying Fogel with O.C. spray.  Fogel released the tray slot and backed away from the cell door.  (*Id.* ¶ 14.)  Fogel told Blackburn "that's okay, I'm going to write you up for that one."  Blackburn then opened the tray slot and administered O.C. spray on Fogel for the second time.  (*Id.* ¶ 15.)

Plaintiff was handcuffed and escorted to the medical department by Sgt. Boggs without incident, where his vitals were checked.  Fogel was then escorted back to the pod where he showered for decontamination and was placed back in the same cell #602 that was contaminated with O.C. spray.  (*Id.* ¶ 18.)

Fogel alleges an Eighth Amendment excessive force claim against Officer Blackburn. He requests compensatory damages, punitive damages, and a transfer to an out-of-state facility for the balance of his prison term.  (Am. Compl. at p. 17.)

Fogel attached an affidavit to his amended complaint from a fellow inmate named Jules Moultrie.  Moultrie states that he stood at his cell door on May 23, 2024, and watched Blackburn willfully spray the inmate in cell number 602 without notifying the sergeant about the issue, without giving notice to medical in case there were injuries, and without receiving prior authorization from the watch commander.  (Dkt. No. 27-2.)

**B.  Facts in Support of Motion for Summary Judgment**

In support of his motion for summary judgment, Blackburn submitted his own affidavit and the affidavits of Wallens Ridge Sargeant Boggs and Registered Nurse Brummette.  (Dkt. Nos. 37-1, 37-2, 37-3.)  Blackburn has also filed body camera footage of Sargeant Boggs and Lieutenant Ferguson from the day in question.  (Dkt. No. 41.)

On May 23, 2024, Blackburn was working in D-6 pod at Wallens Ridge at approximately 3:40 p.m., going cell to cell and passing out inmate food trays.  The standard procedure is that Blackburn opens the top sliding part of the inmate's tray slot.  He then places the food tray in the tray slot, which is a box that the inmate can access from his cell, and the inmate collects the tray. The top of the tray slot is then closed and secured.  (Blackburn Aff. ¶ 4.)

When Blackburn arrived at Fogel's cell, D-602, he opened the tray slot and gave Fogel his tray.  Right after that, Fogel told Blackburn that he was done with the tray and wanted Blackburn to retrieve it.  Fogel then reached his arm out of the security tray slot and tried to grab Blackburn's arm.  Fogel kept his arm inside the tray slot box which kept the box from closing. Blackburn told Fogel to pull his arm back into his cell, but he did not.  Blackburn then

3

administered a one-half to one second burst of O.C. spray through the tray slot as an attempt to get Fogel to back away from the tray slot so it could be closed. Blackburn stepped away from the cell door and notified Sgt. Boggs by radio about the incident. Blackburn prepared an Internal Incident Report. (Blackburn Aff. ¶ 5, Ex. A.)

The O.C. administered by Blackburn hit Fogel's stomach area because he had his torso up against the tray slot. Fogel remained at the cell door. (Blackburn Aff. ¶ 6.) The entire incident lasted a matter of seconds. (*Id.* ¶ 7.) Blackburn only administered the O.C. spray one time. (*Id.* ¶ 8.) Sgt. Boggs immediately responded to Blackburn's radio call and arrived at Fogel's cell. Blackburn left and had no further interactions with Fogel. (*Id.* ¶ 9.)

Inmates are not allowed to place their hands or arms outside of the tray slot at any time or to prevent it from being closed. Such action violates rules and policies at Wallens Ridge and the Virginia Department of Corrections. By putting his hand or arms out of the tray slot and preventing the slot from being closed, an inmate can physically assault staff or can throw objects or bodily waste on staff. (Blackburn Aff. ¶ 13.)

When it is possible, the individual authorizing use of O.C. spray will check with the medical department to determine if the inmate has any medical restrictions prohibiting the use of the spray. When an inmate poses an immediate risk, the officer will not be able to check with medical prior to using the spray. (*Id.* ¶ 14.)

After Sgt. Boggs arrived at Fogel's cell, Fogel was restrained and escorted to Wallens Ridge's medical department. (Boggs Aff. ¶ 6.) They were met by Lt. Ferguson and Nurse Brummette. (Boggs Aff. ¶ 6; Brummette Aff. ¶ 5.) Nurse Brummette examined Fogel and prepared an Accident/Injury Report. Nurse Brummette noted that Fogel was not in any acute distress. Fogel stated, "I'm good. I don't need medical." (Brummette Aff. ¶ 6, Enc. A.) Fogel

4

was stable, and Nurse Brummette recommended that he follow up with medical as needed. Fogel was not in distress and had no complaints.  Nurse Brummette's examination revealed no injuries resulting from the use of O.C. spray.  (*Id.*)

Sgt. Boggs' body camera footage shows that Fogel does not appear to be in any discomfort or distress following the O.C. spray incident.  Fogel is talkative, states he is alright, admits that he held open his tray slot, and that he was sprayed in the stomach.  (Boggs Aff. ¶ 9; Axon Body 3 Video 2024-05-23 1543 X60AY684C at 1:26–1:54.)  On Lt. Ferguson's body camera footage, Ferguson asks Fogel what happened and Fogel states that he put his hand out through the slot.  Lt. Ferguson told Fogel that there were better ways to handle things.  (Boggs Aff. ¶ 12; Axon Body 3 Video 2024-05-23 1548 X60A4148L at 1:56–2:15.)

After Fogel was seen in the Medical Department, Officer Clinton and Sgt. Boggs escorted Fogel back to his housing unit and placed him in the shower for decontamination. (Boggs Aff. ¶ 8.)

## C.  Plaintiff's Response to Motion for Summary Judgment

Plaintiff's response, which is also verified, reiterates the allegations in his amended complaint, including his assertion that Blackburn sprayed him with O.C. spray twice, not once. (Dkt. No. 43; *see also* Fogel Affidavit, Dkt. No. 43-2.)  Fogel also disputes several of the factual assertions set forth in Blackburn's brief that are derived from the affidavits and body camera footage. (*See* Fogel Aff.)  For example, Fogel denies that he reached out or towards Blackburn through the tray slot in his cell.  (*Id.* at 3.)  Finally, Fogel argues that he is "entitled to summary judgment as to his Eighth Amendment claim against the Defendant, and respectfully requests the court enter judgment in his favor[]."  (Dkt. No. 43 at 8.)

The court further notes that while Blackburn submitted only two videos in support of his motion for summary judgment, there are twenty-two (22) total videos retained by VDOC in relation to this case. At Fogel's request, all 22 videos were submitted under seal by the defendant. (Dkt. No. 53.)

**D. Plaintiff's Motion for Preliminary Injunction**

Plaintiff's motion for a preliminary injunction explains that he had been transferred to Red Onion State Prison after the events giving rise to this lawsuit, but now he has been transferred back to Wallens Ridge as of May 4, 2025. (Dkt. No. 45.) Fogel requests an immediate transfer because of this lawsuit and another lawsuit he has filed against Wallens Ridge employees. Fogel fears for his well being and "of there being a matter of a conflict of interest in my cases, and of there being dire issues of retaliation against me." (*Id.*)

## II.  ANALYSIS

**A. Summary Judgment Standard**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a summary judgment motion, a court "must consider whether a reasonable jury could find in favor of the non-moving party, taking all inferences to be drawn from the underlying facts in the light most favorable to the non-movant." *In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest

on the allegations averred in the pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate the existence of specific, material facts that give rise to a genuine issue. *Id.*

To the extent that cross-motions for summary judgment are before a court, "the court examines each motion separately, employing the familiar standard under Rule 56 of the Federal Rules of Civil Procedure." *T.H.E. Ins. Co. v. Davis*, 54 F.4th 805, 818 (4th Cir. 2022).

## B. Eighth Amendment Excessive Force Claim

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). This includes using O.C. spray "in greater quantities than necessary" to maintain or restore discipline "or for the sole purpose" of inflicting pain on an inmate. *Johns v. Gwinn*, 503 F. Supp. 3d 452, 476 (W.D. Va. 2020) (citing *Williams v. Benjamim*, 77 F.3d 756, 763 (4th Cir. 1996)). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component—that the harm inflicted was sufficiently serious—and a subjective component—that the prison official acted with a sufficiently culpable state of mind. *Williams*, 77 F.3d at 761.

Under the objective component, only more than *de minimus* or nontrivial force is required. *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010). And "when a use of force is malicious or repugnant, a plaintiff need not suffer anything significant to establish an excessive force claim." *Thompson v. Virginia*, 878 F.3d 89, 101 (4th Cir. 2017). Under the subjective prong, the court must consider such factors as the need for the use of force, the relationship between that need and the amount of force used, the extent of the injury inflicted, and, ultimately, whether the force was "applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." *Whitley*, 475 U.S. at 320–21.

First, under the objective component of the analysis, Blackburn argues that there was not a serious use of force because Fogel appeared to suffer no injuries.  Plaintiff's lack of injuries, or lack of serious injuries, is not dispositive.  *See May v. Wright*, Civil Action No. 7:23-cv-00053, 2025 WL 726578, at *4 (W.D. Va. Mar. 6, 2025) (citing *Hudson v. McMillian*, 503 U.S. 1, 10 (1992)).  Force that is maliciously applied can violate the Eighth Amendment even if it does not result in serious injury.  *Thompson*, 878 F.3d at 101.  Moreover, plaintiff avers that while he appeared uninjured at the time of the incident, his skin and eyes were burning in his cell after the O.C. spray was administered, and when he was taken out of the cell it was easier for him to speak and breathe.  (Dkt. No. 43-2 at 22.)  Later, when he showered off the remnants of the spray, the pain was worsened by the water causing the spray to run down the "entire lower part of my body, and private region, a painful burning which did not rece[de] for several more hours."  (*Id.* at 22–23.)  Thus, the court finds that there is an issue of fact to preclude summary judgment on the objective component of Fogel's claim.  *See Johns*, 503 F. Supp. 3d at 477 (collecting cases finding that the "use of OC spray . . . constitutes a sufficiently serious use of force to meet this prong of the analysis").

Under the subjective prong, Fogel has admitted that he held open his cell tray slot.  (*See* Am. Compl. ¶ 11.)  However, Fogel disputes that he reached out or attempted to grab Blackburn. Fogel also states that Blackburn did not give any orders, commands, or verbal warnings.  Finally, Fogel asserts that Blackburn used two bursts of O.C. spray, not one.  These are factual disputes that are relevant to the subjective component of Fogel's excessive force claim.

In sum, the court finds issues of fact preclude summary judgment as to whether the harm inflicted on Fogel was sufficiently serious, and also whether Officer Blackburn acted in a "good faith effort to maintain or restore discipline," or "maliciously and sadistically for the very

purpose of causing harm" to Fogel, *see Dean v. Jones*, 984 F.3d 295, 302 (4th Cir. 2021) (citing *Whitley*, 475 U.S. at 320–21).

## C.  Fogel's Motion for Summary Judgment

Fogel, as noted, states in his brief that he should be entitled to summary judgment.  The court has found that issues of fact preclude summary judgment in favor of Officer Blackburn. The same factual issues demonstrate that Fogel is also not entitled to summary judgment on his claims.  Fogel's cross-motion for summary judgment will be denied.

## D.  Motion for Preliminary Injunction

A plaintiff seeking a preliminary injunction must establish all four of the following elements: (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest.  *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008).  In the context of the administration of a state prison, injunctive relief should be granted only in compelling circumstances.  *Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994).  The judiciary grants "wide ranging deference" to prison administrators on matters within their discretion.  *Wetzel v. Edwards*, 635 F.2d 283, 288 (4th Cir. 1980).

Fogel seeks a transfer of facilities based upon a perceived threat of retaliation at Wallens Ridge, which is unrelated to his claim for excessive force against Officer Blackburn in this matter.  While a "preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally," an injunction should not issue when "it deals with a matter lying wholly outside the issues in the suit."  *De Beers Consolidated Mines v. United States*, 325 U.S. 212, 220 (1945); *see also Brooks v. Zorn*, No. 2:22-cv-00739-DCN-MHC, 2024 WL 1571688, at *6 (D.S.C. Apr. 11, 2024) (denying motion that "seeks injunctive

9

relief unrelated to his complaint against non-parties to this lawsuit") (citing *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997)).  The court also finds that the public interest is not served by interfering with the VDOC's decisions regarding where Fogel should be placed.

For these reasons, the court will deny Fogel's motion for a preliminary injunction.

### III.  CONCLUSION

Based on the foregoing, the court will issue an order denying the summary judgment motions and denying Fogel's motion for a preliminary injunction.

Entered: March 30, 2026.

*/s/ Elizabeth K. Dillon*

Elizabeth K. Dillon
Chief United States District Judge

10